(No. 23642.—

THE CITY OF EVANSTON, Appellee, *vs.* MARGUERITE WAZAU, Appellant.

*Opinion filed June 17, 1936—Rehearing denied October 13, 1936.*

FRANK E. MCALLISTER, for appellant.

EDWARD T. ARNOLD, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Marguerite Wazau was convicted in the municipal court of Evanston of violating an ordinance for the compulsory inspection of motor vehicles owned by residents of that city. She brings the case here by appeal.

The facts are not in dispute. It is stipulated that appellant operated her automobile on the streets of the city without complying with the requirements of the ordinance. The validity of the ordinance and of the enabling statute under which it was passed are challenged as grounds for reversal.

The ordinance was passed on July 1, 1935, and provides that it shall be unlawful for a resident owner of a motor vehicle to operate it over the streets of the city without first having it inspected at the municipal testing station, as provided by the ordinance. The inspection shall be conducted under the direction of the department of police, for the purpose of determining whether the vehicle conforms to the statutory requirements as to equipment for safe operation. The manner of giving notice to owners of the time when their vehicles are to be called for inspection is specified. Two inspection periods are provided—one for each half of the calendar year. Each resident owner of a motor vehicle is required to submit it for inspection at least once in each inspection period. A certificate of inspection will be issued to the owner of a conforming vehicle and prominently attached thereto. Non-conforming vehicles must be re-submitted for further inspection not less than seven nor more than ten days after disapproval. The operation of a motor vehicle without display of the inspection certificate is prohibited. Penalties are fixed for each day's violation of any of the provisions of the ordinance.

The ordinance is based on section 21c of the Motor Vehicle act, added by the amendment of June 6, 1935. (Ill. State Bar Stat. 1935, chap. 95a, par. 22-3.) That section provides: "Any city, village or town having a population of 40,000 or over, may, by ordinance, require the resident owner of a motor vehicle to submit, not more often than semi-annually, such motor vehicle for inspection to determine the sufficiency of the equipment required by this act for safe operation on public highways and may provide testing stations, located at convenient places in each such city, village or town, for the inspection of such equipment. Said testing stations may be constructed, maintained and operated from funds authorized to be appropriated for such purpose by section 26 of this act. No fee shall be charged said owner for such inspection."

The act of June 6, 1935, which added section 21c, also amended section 26 by conferring authority to appropriate money from license fees for establishing and maintaining inspection stations. By a subsequent act filed July 13, 1935, section 26 was again amended, and omitted any provision for such appropriation. This amendment was to become effective January 1, 1936. Appellant insists that inasmuch as the last amendment eliminated the provision for the use of certain funds to defray expenses incurred under section 21c and provided that the amendatory act should not take effect until January 1, 1936, the result in some way suspended section 21c. Municipalities have power to appropriate money from the general funds for any corporate purpose. The power granted under section 21c to establish and maintain inspection stations is complete without any specific legislation concerning appropriation of funds. It is in no way dependent upon or controlled by any provision of section 26, and was not affected by the amendment of the latter section.

It is claimed that the provision of the ordinance requiring inspection "at least once" in each semi-annual inspec-

tion period is in conflict with section 21c of the statute, which provides that inspection may be required not more than semi-annually. The ordinance plainly requires an original inspection only once in each inspection period. The words "at least once" cover re-inspection upon a determination of non-conformity with the requirements of the statute. In the absence of power to enforce the statutory requirements, the purpose of the law to accomplish safe operation of motor vehicles would be ineffectual. The provision for re-inspection on non-conformity is a power included by necessary implication in connection with the expressed purpose of the law. The ordinance is not in conflict with the statute because of a difference in penalties. The violation of a statute and the violation of an ordinance by the same act are separate offenses, separately punishable.

It is asserted that section 21c and the ordinance violate the due process clause of the State and Federal constitutions. The argument advanced is that the terms are arbitrary, harsh and unreasonable and not a valid exercise of the police power. The law is that an act which deprives a citizen of his liberty or property rights cannot be sustained under the police power unless a due regard for the public health, comfort, safety or welfare requires it. In the exercise of this power the legislature may enact laws regulating, restraining or prohibiting anything harmful to the welfare of the people, even though such regulation, restraint or prohibition interferes with the liberty or property of an individual. Neither the fourteenth amendment to the Federal constitution nor any provision of the constitution of this State was designed to interfere with the police power to enact and enforce laws for the protection of the health, peace, safety, morals or general welfare of the people. (*Fenske Bros.* v. *Upholsterers Union,* 358 Ill. 239; *People* v. *Anderson,* 355 id. 289.) The same tests are applied to municipal ordinances, (*Koos* v. *Saunders,* 349 Ill. 442,) and the legislature may confer upon cities police

power over subjects which are also within the provisions of the State laws. (*City of Chicago* v. *Union Ice Cream Manf. Co.* 252 Ill. 311.) Common knowledge of the enormous and steadily increasing toll of deaths and injuries from automobile accidents undoubtedly actuated the legislature in enacting the statutes requiring safe equipment and enabling municipalities to assist in the safety program by periodical inspection.

Section 21c and the ordinance do not unreasonably discriminate against residents of the city. The classification is reasonable and valid. *Heartt* v. *Village of Downers Grove,* 278 Ill. 92.

The claim that the amendatory act of June 6, 1935, is unconstitutional because it does not express the subject in its title must be denied. The title is, "An act to amend section 26 of 'An act in relation to motor vehicles and to repeal a certain act therein named,' approved June 30, 1919, as amended, and to add section 21c thereto." An act to amend another act, the former setting out the latter's title, is as comprehensive as the act amended, and any provision which might have been inserted in the original act may be incorporated in the amendatory act without violating the constitutional provision that the subject of an act shall be expressed in the title. (*Michaels* v. *Barrett,* 355 Ill. 175; *People* v. *Board of County Comrs.* id. 244.) The subject matter contained in the amendatory act could have been included in the original act, and since the amendatory act set out the full title of the original act, the criticism against it cannot be upheld.

There remains to be considered the claim that section 21c and the ordinance are void for uncertainty, in delegating arbitrary judicial powers to the department of police as judges both of the law and the facts. Similar questions have been before this court on numerous occasions. A large number of the decisions are collated in *Lydy* v. *City of Chicago,* 356 Ill. 230, which contains a

recent expression on the subject. In that case we said: "It is true that while a legislative body cannot divest itself of its proper function of determining what the law shall be, it may nevertheless authorize others to do those things which it might properly but cannot understandingly or advantageously do itself. * * * This doctrine is sound and has been adhered to for many years, for the obvious reason that government could not be carried on if nothing were left to the judgment and discretion of administrative officers. * * * A clear distinction exists, however, between the power to legislate—to grant the permit under certain specified conditions—and the power to administer or regulate its exercise, once granted." "The true distinction is between a delegation of power to make the laws, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made."— 1 Sutherland on Stat. Const. (2d ed.) p. 148.

The purpose of the inspection authorized by the statute is expressed to be, "to determine the sufficiency of the equipment required by this act for safe operation on public highways." The purpose of the ordinance is the same. They must stand or fall together. The equipment mentioned is provided for by article 15 of the Motor Vehicle act, which deals with the number, kind and description of lamps, brakes, horns, mufflers, wind-shield wipers, tires, warning flares and placards for vehicles carrying explosives. The requirements for each of such articles are specified. The lights must be visible at least five hundred feet when lighted. Number plates must be lighted so as to be legible at a distance of fifty feet. The distance in which brakes will stop the vehicle at certain speeds is specified. Horns must be capable of being heard at fifty feet. Mufflers must prevent unusual or excessive noises and any annoying smoke. Rear view mirrors must reflect the high-

way for at least two hundred feet. Wind-shields must not be obstructed with signs, posters, or the like, and must be equipped with wipers within the control of the driver. Metal tires with projecting lugs are prohibited. The sufficiency of the equipment is determined by whether or not it meets the statutory requirements. To determine that fact requires no special knowledge or skill. Simple tests which can be performed by any person of average intelligence are all that is necessary. The tester is not clothed with any discretion to determine whether the equipment is sufficient for safe driving. That test is fixed by the statute. His duty in the test is solely to determine whether or not it complies with the statutory requirements.

Laws or ordinances by which the rights of a citizen have been subjected to the unlimited discretion of an officer, without any rule or provision of law to govern or control his action, are uniformly held unconstitutional. (*Lydy* v. *City of Chicago, supra; People* v. *Federal Surety Co.* 336 Ill. 472; *City of Chicago* v. *Matthies,* 320 id. 352; *Consumers Co.* v. *City of Chicago,* 298 id. 339.) On the other hand, conferring authority or discretion as to the execution of the law, to be exercised under and in pursuance of the law, is not objectionable. (*Lydy* v. *City of Chicago, supra; City of Chicago* v. *Washingtonian Home,* 289 Ill. 206; *Arms* v. *Ayer,* 192 id. 601; *Spiegler* v. *City of Chicago,* 216 id. 114; *City of Pekin* v. *Industrial Com.* 341 id. 312.) In the *Washingtonian Home case* we held that an ordinance requiring the installation of sprinkler systems, not providing that any certain system should be installed but only that as a safety measure the plan must be approved by the chief of the bureau of fire prevention and safety, was not unconstitutional. In *Arms* v. *Ayer, supra,* where the Fire-escape act provided that all buildings four or more stories high, and other buildings of two or more stories used for certain purposes, should have one or more metallic fire-escapes, the delegation of discretion to the in-

spector of factories as to the number and location of fire-escapes was held not to be an illegal delegation of legislative power. In that case we pointed out that the inspector was given no power to judicially determine any question but only to act ministerially in the supervision of the building of the fire-escapes. That doctrine is applicable to the facts in this case. In the *Spiegler case* a requirement that oil tank wagons should be equipped with a drip-pan or other device to prevent spilling of oil on streets, such device to be subject to the approval of the commissioner of public works, was held not an unlawful delegation of legislative power. We called attention to the fact that the power conferred upon the commissioner pertained solely to the execution of the ordinance and not to its passage. In the *City of Pekin case* we held that an ordinance placing bridge-tenders under the supervision of the bridge committee of the city council, which committee should prescribe rules regulating their employment and hours of work, sufficiently specified the duties of bridge-tenders and is valid. Other analogous cases are reviewed in *Block v. City of Chicago,* 239 Ill. 251, where we held that an ordinance requiring permits for the exhibition of moving pictures, and that the chief of police should not issue a permit for the exhibition of immoral or obscene pictures, was not an unlawful delegation of discretionary authority to determine the character of pictures. It has never been questioned that power may be delegated to officers to determine facts.

Section 21c and the ordinance are not unconstitutional for the reasons urged.

The judgment of the municipal court is therefore affirmed.

*Judgment affirmed.*