## THOMPSON HEATING CORPORATION, Appellant v. HARDWARE INDEMNITY INSURANCE COMPANY OF MINNESOTA, Appellee.

Ohio Appeals, First District, Hamilton County.

No. 6369—Decided February 28, 1944.

Mr. Leo J. Brumleve, Jr., Cincinnati, for appellant.
Messrs. Dolle, O'Donnell & Cash, Cincinnati, for appellee.

386

## OPINION

By HILDEBRANT, J.

Plaintiff was the insured in two policies of indemnity insurance, one a public liability policy, issued by Liberty Mutual Insurance Company, indemnifying generally any operation in which plaintiff was engaged, the other issued by defendant, being an automobile liability policy indemnifying against bodily injury, etc., for loss sustained by reason of the ownership, maintenance, and use of a certain truck. Each policy contained a proportionate liability clause.

Plaintiff is engaged in the retail and wholesale furnace and stoker business, and, as an incident thereto, purchased an especially designed, built, and equipped truck, having a van body, upon the sides of which appeared in large lettering the name of plaintiff company and certain advertising as to rock wool insulation. The truck was specially designed for transporting rock wool insulation in bats and bags and was equipped with a bolted on or permanently attached blower machine for the purpose of unloading the bags of granulated rock wool insulation by breaking them into the hopper and blowing the contents into place in the particular building to be heated by means of a hose extending from the truck attachments into the building.

A pedestrian suffered serious injury occasioned by tripping over the hose extending from the parked truck across the sidewalk into the building, into which the granulated rock wool insulation was being blown.

On notice, defendant denied the subject of the risk. The Liberty Mutual Insurance Company acknowledged liability and loaned plaintiff the money to effect a settlement with the injured party, under a written agreement, whereby plaintiff became obligated to test defendant's proportionate liability, if any, by suit.

At the close of all the evidence, both parties moved for a directed verdict. The trial court granted defendant's motion.

and this is an appeal on questions of law from the judgment entered on the verdict thus returned.

The prime question in the case is whether by its terms the policy issued by defendant comprehends the risk of the happening under the circumstances here present.

Under the heading "Insuring Agreements", the policy provides:

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Item 5, page 1, provided:

"The purposes for which the automobile is to be used are:
"(a) The term 'pleasure and business' is defined as personal, pleasure, family and business use.
"(b) The term 'commercial' is defined as use principally in the business occupation of the named insured as stated in Item 1, including occasional use for personal, pleasure, family and other business purposes.
"(c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

The face of the policy discloses plaintiff's occupation described as "Retail & Wholesale Furnaces & Stokers", the truck described generally only, but showing the actual cost including equipment, following which the premium charges are set forth.

The testimony shows the truck was insured on the same day it was acquired by purchase and was specially fitted and adapted as a complete unit for installation of insulation simultaneously with the unloading thereof.

In construing this policy, general rules for the construction and interpretation of written contracts are applicable. It is fundamental that the intent of the parties, when ascertained, will control. If not ambiguous or uncertain, the express terms and plain language as ordinarily understood will be given effect as revealing the intention of the parties. If that intention be clearly revealed, there is no room for the application of rules of construction necessary in searching for the

388

meaning of ambiguous language. No new or changed con-tract is to be arrived at either by ascribing finely drawn con-notations to simple terms or by disregard for the simplicity or plainness of terms used. Counsel for both parties have fur-nished numerous citations, with which on their facts the court both agrees and disagrees, but none of which is dispositive of the case at bar.

The language of coverage quoted supra is all inclusive and utterly without qualification, loading and unloading is includ-ed, the truck is actually employed to house and support the blowing process and this court is of the opinion that the lan-guage is simple and clear and reveals the intention of the parties to insure the risk involved herein and incident to the normal use of the specially equipped truck.

The trial court based its decision on its finding of no coverage and while deeming it not essential to a decision went on to approve plaintiff's right to proceed to a settlement of the personal injury claim on defendant's refusal to partici-pate and defend. With this view, this court is in accord. **Em-ployers' Liability Assurance Corp. v Oles, 13 Abs 436; 29 Am.** Jur., §1077, p. 808; Annotation, 71 A. L. R., 1479. The question of the good faith and reasonableness of the settlement was raised by the pleadings as an issue in the case, with the bur-den of proof thereof resting upon the plaintiff. Jones v Southern Surety Co., 210 Ia., 61, 230 N. W., 381, and had the trial. court definitely and clearly found the settlement to be a rea-sonable one, arrived at in good faith, this court would enter final judgment for the plaintiff. However, the record falls short of revealing such a finding with sufficient clarity to jus-tify that action by this court.

The trial court further found no merit in the contention. that the agreement between plaintiff and The Liberty Mutual Insurance Co. was champertous, with which finding this court is in accord, and the question as to the real party in in-terest has heretofore been disposed of by this court. **Thomp-son Heating Co. v Hardware Indemnity Co., 72 Oh Ap 55, 50** N. E. (2d), 671.

The judgment is therefore reversed and the cause remand-ed for further proceedings according to law.

ROSS, P. J., and MATTHEWS, J., concur.