ROCKFORD DROP FORGE CO. *et al.*, Petitioners-Appellants, *v.*
THE POLLUTION CONTROL BOARD, Respondent-Appellee.

Second District    No. 73-293

Opinion filed April 30, 1979.

SEIDENFELD, J., specially concurring.

Ronald Butler, of Winston & Strawn, of Chicago, for petitioners.

William J. Scott, Attorney General, of Chicago, and Raymond W. Mushal, of U. S. Department of Justice, Pollution Control Section, of Washington D. C. (George Wm. Wolff and Russell R. Eggerts, Assistant Attorneys General, of counsel), for respondent.

Mr. JUSTICE GUILD delivered the opinion of the court:

■■ This opinion resolves issues raised by a petition for review of stationary source noise emission regulations which have been adopted by the Pollution Control Board (hereinafter PCB) pursuant to title VI of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, pars. 1023—1025). The direct petition is authorized by titles VII and XI of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, pars. 1029, 1041). The petition was brought by 22 companies that operate forging facilities within the State of Illinois, 9 of which are physically located within the boundaries of this Appellate district. This mixture of petitioners raises an interesting question which has not been argued or briefed by the parties. Section 41 of the Environmental Protection Act provides that:

> "* * * review shall be afforded directly in the Appellate court for the District *in which the cause of action arose* * * *." (Emphasis added.)

Regarding the declaratory review of a PCB regulation which has not yet been enforced, it is unclear exactly where the cause of action is deemed to have arisen. Is it where the headquarters of the State agency is located or is it any district wherein some or all of the petitioners are located? The Act is silent in this regard and our supreme court has not passed upon this question. In the interest of judicial economy we will assume that this petition is properly before us.

The methods by which the PCB developed and adopted the regulations disputed herein have been set forth in detail in the case of *Illinois Coal Operators v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782, and we will not discuss them.[1] Similarly, the evidence introduced before the PCB regarding those regulations is clearly beyond the expertise of this court to independently evaluate and we will not attempt the hopeless task of summarization.

The petitioners have presented numerous issues for our consideration. In the interest of brevity we will state those issues as they are dealt with. ■■ ■ The first three contentions presented by the petitioners challenge the constitutionality of title VI of the Environmental Protection Act itself. They allege that the Act is so vague as to be a violation of due process of law. They also allege that the Act is an unconstitutional delegation of legislative authority to the PCB. Lastly, they contend that the Act is overbroad and a violation of the first amendment. Unlike the ordinary appeal involving a decision by an administrative agency, as we have noted above, this petition is before our court pursuant only to the specific provisions of section 29 of the Environmental Protection Act. That section reads as follows:

> "Any person adversely affected or threatened by any rule or regulation of the Board may obtain a determination of the validity or application *of such rule or regulation* by petition for review under Section 41 of this Act." (Emphasis added.)

Section 41, referred to in this context, only provides the mechanics for filing a petition in this court and does not give any substantive rights to petitioners who have not had an actual case or controversy ruled upon by the Board. Any clear reading of the explicit terms of section 29 makes it obvious that this court is limited to a review only of the rules and regulations promulgated by the Board. Nowhere in the Environmental Protection Act or elsewhere is there authority for this court to consider, as a trial court of original jurisdiction, a challenge to this or any other State statute on any grounds whatsoever. It is true that a constitutional challenge to a statute may be raised during the pendency of an administrative review proceeding flowing from the enforcement of that act. This is permitted to avoid piecemeal litigation, since the declaratory judgment action attacking the statute would have to be brought in the same court as the administrative review action, and both issues could be decided at one time as a matter of judicial economy. (See *Howard v. Lawton* (1961), 22 Ill. 2d 331, 175 N.E.2d 556.) However, we are not proceeding under either administrative review or its equivalent. Rather, we are called upon to weigh the validity of certain regulations promulgated by the PCB in its legislative capacity without

---

[1] Reference is also made to that decision as to numerous public hearings throughout the State relative to the adoption of the proposed regulations.

benefit of an adversary evidentiary proceeding before us or before any lower court or administrative agency. In addition, it is clear that this court is not organized or equipped to function as a trial court, and any judicial economy realized by acting as such would be illusory. In our view, the proper forum for an attack upon the Environmental Protection Act itself was, and is, in a circuit court under declaratory judgment (Ill. Rev. Stat. 1973, ch. 110, par. 57.1(1)). Accordingly, we hold that we are without jurisdiction to consider the first three questions presented by the petitioners.

As their fourth point, the petitioners contend that they are denied equal protection of the law because the regulations adopted by the board arbitrarily discriminate against stationary noise sources. Since this constitutional argument is directed against the regulations themselves rather than the authorizing statute, we will deal with it. The heart of the petitioners' argument is that there are other categories of noise emission sources which were identified by the PCB's advisory task force. Those three other categories, airport, ground transportation, and construction noise, have not yet had regulations promulgated to control them. The petitioners contend that the regulation of stationary noise sources alone, under these circumstances, is impermissibly arbitrary. We note that this issue has already been presented and rejected by the courts of this State. In the case of *Illinois Coal Operators v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782, our supreme court specifically held that these same stationary noise source regulations do not violate the equal protection clauses of either the United States or Illinois constitutions. Even if we were wont to do so, we will not contradict the finding of that court.

■■ ■ The petitioners next allege that the regulations are not a proper exercise of the police power of this State and are not reasonably related to the public welfare because there has been no showing that any person is harmed. An identical contention was made and rejected in the case of *Union Oil Co. v. Pollution Control Board* (1976), 43 Ill. App. 3d 927, 931, 357 N.E.2d 715, 718-19, where the court stated:

> "We are persuaded the regulation does not exceed the broad police power of the State in that the regulation has a legitimate legislative purpose and has a reasonable relationship to the specific object sought to be attained by its enactment."

We concur. We also point out that for the legitimate police power of this State to apply to a subject it is not necessary to show that harm to any specific person has already occurred. It is obviously appropriate for the State to enact prophylactic regulations designed to prevent harm from occurring.

■■ The next contention raised is that the PCB exceeded its authority under the Act because its regulations go beyond the standards developed

for public nuisance. Identical arguments in this regard have been unanimously rejected by the courts of this State in the following cases: *Illinois State Chamber of Commerce v. Pollution Control Board* (1977), 49 Ill. App. 3d 954, 364 N.E.2d 631; *Ferndale Heights Utilities Co. v. Pollution Control Board* (1976), 44 Ill. App. 3d 962, 358 N.E.2d 1224; *Shell Oil Co. v. Pollution Control Board* (1976), 37 Ill. App. 3d 264, 346 N.E.2d 212. We concur with the findings of those cases and adopt their reasoning.

■ The petitioners next attack the regulations as being against the manifest weight of the evidence introduced at hearings before the Board. The petitioners contend that we should reweigh the evidence and invalidate the regulations. Due to the present state of the law we cannot, and do not, consider that contention. The appropriate standard of review of PCB regulations is whether they are arbitrary, capricious or unreasonable. This standard was unequivocally set forth by our supreme court in the case of *Illinois Coal Operators v. Pollution Control Board*, 59 Ill. 2d 305, 319 N.E.2d 782, and *Union Oil Co. v. Pollution Control Board*, 37 Ill. App. 3d 264, 346 N.E.2d 212. We will also follow that mandate and will not reweigh the evidence.

■ The next argument presented by the petitioners is that various acts of Congress have both expressly and impliedly preempted the field of noise regulation and, therefore, the State's regulatory scheme is void. As to this argument, we are of the opinion that it is in reality an attack upon title VI of the Environmental Protection Act itself and not just upon the regulations promulgated by the Board. If we are correct, then, as we have noted above, the argument of preemption is not properly before us and should be dismissed without further comment. However, to avoid any misinterpretation, we briefly comment on this allegation. First, we note that the Federal environmental agency and the Department of Justice have filed an *amicus curiae* brief with this court. In that brief they deny that there has been a total preemption of the noise regulation field by the Federal Government and direct our attention to the appropriate law. In the case of *Florida Lime and Avocado Growers v. Paul* (1963), 373 U.S. 132, 142, 10 L. Ed. 2d 248, 257, 83 S. Ct. 1210, the court said:

> "The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained."

In the case before us it is clear that no Federal act expressly reserves the exclusive power to regulate the field of noise control. Secondly, the provisions of section 6(e) of the Federal Noise Control Act (42 U.S.C. §4905(e) (1976)) specifically allow State and local control of environmental

noise which would result from the use of a product by its ultimate consumer, such as is the case here. Third, the legislative history of the Federal acts concerning noise control shows a clear and unmistakable intent of Congress to permit, and even encourage, local control over noise. Therefore, we reject the petitioners' contention of express or implied preemption on its merits.

The final argument presented herein is three-fold and initially somewhat obscure. The petitioners first allege that statewide noise regulations "usurp" the power of local government to zone land, in that they affect or restrict the uses to which land is put. Second, they contend that noise is a purely local concern which should not be regulated by the State as a matter of policy. Third, and lastly, they contend that the problems involving noise are closely involved with and related to problems of public nuisance control and zoning and, therefore, they should be dealt with on the local rather than on the State level. The underlying issue which is presented by the arguments of the petitioners is that noise is a local issue and should not be subject of statewide control. This issue has been resolved by the legislature in its declaration in title VI and the duty of the PCB as prescribed by that act is to implement that mandate. It is clear that these last three arguments are directed at the validity of the Act itself rather than merely the regulations. Therefore, for the reasons we have stated above, we are without jurisdiction to consider them, and will not do so.

For the reasons set forth in this opinion, the regulations promulgated by the PCB for the control of stationary source noise emissions are valid and are affirmed.

Affirmed.

WOODWARD, J., concurs.

Mr. JUSTICE SEIDENFELD, specially concurring:

I concur in the result reached by the majority, but not with all that is said in the majority opinion.

The majority takes the position that this court, in determining the validity of the rules and regulations of the Pollution Control Board (PCB), cannot adjudicate a constitutional challenge to those sections of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*) upon which those rules are based. The majority states:

> "[T]his petition is before our court pursuant only to the specific provisions of section [29] of the Environmental Protection Act. * * * Any clear reading of the explicit terms of Section 29 makes it obvious that this court is limited to a review only of the rules and regulations promulgated by the Board. Nowhere in the

Environmental Protection Act or elsewhere is there authority for this court to consider * * * a challenge to this or any other State statute on any grounds whatsoever." 71 Ill. App. 3d 295, 297.

I agree that the instant appeal was brought to test the validity "of the rules and regulations promulgated by the Board." However, an administrative rule that is based upon an unconstitutional statute is, of course, invalid. Indeed, a challenge to the enabling act that underlies an administrative rule is the most basic challenge that can be made to the validity of such a rule. The Supreme Court of the United States, in adjudicating the validity of an administrative order, has said: "Only if the statutory basis for an order is within constitutional limits, can it be said that the resulting order is legal." (*State v. United States Civil Service Commission*, 330 U.S. 127, 138, 91 L. Ed. 794, 803-04, 67 S. Ct. 544, 551 (1947).) Only if the statutory basis for the PCB's rules are within constitutional bounds, can it be said that the resulting rules are valid. Hence, I would reach the issue of the constitutionality of sections 23 through 25 of the Environmental Protection Act. Ill. Rev. Stat. 1977, ch. 111½, pars. 1023, 1024, 1025.

The majority next states that judicial review of the constitutionality of the underlying statute must be avoided in the instant case because, in the majority's view, "[W]e are not proceeding under either administrative review or its equivalent." However, it is manifest that the instant appeal is in the nature of administrative review. After all, we are called upon to determine the validity of an administrative rule promulgated by an administrative agency. The fact that we are reviewing the agency's exercise of quasilegislative, as opposed to quasijudicial, power does not render this appeal a nonadministrative review action. It is noteworthy that in the Federal system, quasilegislative rulemaking is, with several exceptions, subject to review by the Federal courts pursuant to the explicit provisions of the Administrative Procedure Act (5 U.S.C. §553 (1976)); the subchapter of this Act which establishes review of administrative rulemaking also provides for judicial review of administrative orders of a quasijudicial nature. (5 U.S.C. §554 (1976).) It thus appears that Congress, in the analogous Federal situation, treats judicial review of administrative rulemaking as "an administrative review action."

In the instant case, section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1041) provides that the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) shall govern the instant type of judicial review in all respects save two. First, review is to the "Appellate Court for the District in which the cause of action arose and not in the Circuit Court." (Ill. Rev. Stat. 1977, ch. 111½, par. 1041; see also Supreme Court Rule 335.) Second, nothing in the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), made applicable to

judicial review of the rules and orders of the PCB, shall be construed to limit the review explicitly provided in section 29 of the Environmental Protection Act. (Ill. Rev. Stat. 1977, ch. 111½, par. 1041.) It thus would appear that according to the very terms of section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1041), which governs this appeal, this action is in the nature of administrative review. The Illinois Supreme Court has stated, on several occasions, that challenges to an underlying statute or ordinance can be reached by a court on judicial review of administrative action. (See, *e.g., Winston v. Zoning Board of Appeals,* 407 Ill. 588, 592 (1950); see also *Howard v. Lawton,* 22 Ill. 2d 331, 333 (1961); *Ronda Realty Corp. v. Lawton,* 414 Ill. 313, 315-17 (1953).) Once again, it appears that this court should reach the constitutional challenge to the underlying statute.

The majority next states:

> "[W]e are called upon to weigh the validity of certain regulations promulgated by the PCB in its legislative capacity without benefit of an adversary evidentiary proceeding before us or before any lower court or administrative agency. In addition, it is clear that this court is not organized or equipped to function as a trial court, and any judicial economy realized by acting as such would be illusory." (71 Ill. App. 3d 295, 297-98.)

It is difficult to comprehend this aspect of the majority's opinion; the majority is apparently suggesting that this court, or a trial court, would be required to *take evidence* in order to decide the issue whether sections 23-25 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, pars. 1023-25) are unconstitutional. The issue of the constitutionality of a statute is, of course, a question of law for the court and does not require taking evidence. Indeed, the reason for making the validity of rules and orders of the PCB directly appealable to the appellate court was that review under the Administrative Review Act was limited, in the circuit courts, to questions of law. "The Environmental Protection Act authorizes review of Board orders in accordance with [the Administrative Review Act], 'except that review shall be afforded directly in the Appellate Court for the District in which the cause of action arose and not in the Circuit Court.' As the Governor's message noted [Governor Richard Ogilvie, Special Message on the Environment, at 4, April 23, 1970], direct review accelerates the decision-making process: *'There is no need for a trial court hearing to review board orders, since the Administrative Review Act limits review to questions of law.'* " (Emphasis added.) Currie, *Illinois Pollution Law Enforcement,* 70 Nw. U. L. Rev. 389, 482 (1975).

I shall now turn to the merits of the challenge. The appellants charge that sections 23-25 of the Environmental Protection Act (Ill. Rev. Stat. 1977,

ch. 111½, pars. 1023-25) are void for vagueness. Section 24 provides as follows:

"No person shall emit beyond the boundaries of his property any noise that unreasonably interferes with the enjoyment of life or with any lawful business or activity, so as to violate any regulation or standard adopted by the Board under this act." (Ill. Rev. Stat. 1977, ch. 111½, par. 1024.)

It is true that if the General Assembly had made it a criminal offense to emit noise that "unreasonably interferes with the enjoyment of life," without more, the appellants would have a fair argument to the effect that the statute is void for vagueness. However, section 24, reasonably construed, only prohibits the emission of noise that violates a "regulation or standard adopted by the Board under this Act." It thus appears that no person could be guilty of violating section 24 apart from a violation of a rule or regulation promulgated by the PCB under sections 25 and 27. It thus appears that the appellants' argument in this regard is without merit. Cf. *Grayned v. City of Rockford*, 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-29, 92 S. Ct. 2294, 2298-99 (1972).

The appellants next argue that section 25 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1025) amounts to an unconstitutional delegation of power, by the General Assembly, to an administrative agency. It is true that the General Assembly cannot delegate its general legislative power to make the law; nonetheless, it may delegate to administrative agencies power to do those things which the General Assembly might do, but cannot do as understandingly or advantageously. (*People ex rel. Daesch v. Mayor of Belleville*, 22 Ill. 2d 226, 230 (1961).) When the General Assembly delegates legislative power to an administrative agency, it must establish intelligible standards to guide the officers of the agency in exercising that power. (See, *e.g., Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill. 2d 540, 551 (1977).) "The precision of the permissible standard required to be set by the legislature must necessarily vary according to the nature of the ultimate objective and the peculiar problems involved." (*Board of Education v. Page*, 33 Ill. 2d 372, 375 (1965).) Where the rules or regulations are based on highly technical information, the General Assembly may establish only the most minimal standards without offending the constitutional principle of separation of power. (See, *e.g., Hill v. Relyea*, 34 Ill. 2d 552, 555-56 (1966).) In the instant case, sections 25 and 27 of the Environmental Protection Act do establish criteria according to which the PCB shall exercise its rulemaking authority in the matter of noise control. Given the highly technical nature of the information that underlies the PCB's rules and regulations, it cannot be said that the General Assembly's failure to be more precise in establishing standards in this matter violates the Illinois Constitution. Ill. Const., art. II, §1.

Finally, the appellants challenge section 24 of the Environmental Protection Act on the grounds that it is "overbroad" in that it could conceivably be used by the PCB at some future date to restrict the exercise of free speech. The weakness of this argument is similar to the weakness of the appellants' argument to the effect that sections 23-25 are void for vagueness. The appellants do not charge that section 24, apart from the regulations that may be promulgated under it has a "chilling effect" upon free speech; nor could they in any reasonable way argue to this effect. Rather, the appellants suggest that the PCB may at some future date choose to ignore the requirements of the First Amendment and enact rules and regulations that would inhibit free speech. This type of anticipatory overbreadth is not sufficient to ground a constitutional challenge. For a further discussion of this issue, see *Grayned v. City of Rockford*, 408 U.S. 104, 114-15, 33 L. Ed. 2d 222, 231, 92 S. Ct. 2294, 2302-06 (1972).